Melvyn ZUPNICK, Plaintiff,

v.

Roberto C. GOIZUETA, Cathleen P. Black, Warren E. Buffett, M. Douglas Ivester, Susan B. King, Herbert A. Allen, Charles W. Duncan, Jr., James D. Robinson, III, Peter v. Ueberroth, Ronald W. Allen, Donald E. McHenry, Paul F. Oreffice, James B. Williams, William B. Turner, and The Coca–Cola Company, Defendants.

Civ. A. No. 14874.

Court of Chancery of Delaware, New Castle County.

Submitted: Oct. 22, 1996.
Decided: Jan. 21, 1997.

Norman M. Monhait, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington; and A. Arnold Gershon, P.C., New York City, for Plaintiff.

Lawrence C. Ashby, Ashby & Geddes, Wilmington, for Roberto C. Goizueta.

A. Gilchrist Sparks, III, Jon E. Abramczk and Jeffrey R. Wolters, Morris, Nichols, Arsht & Tunnell, Wilmington, for Defendants other than Roberto C. Goizueta.

## OPINION

JACOBS, Vice Chancellor.

Pending are motions to dismiss this stockholder's derivative action which claims that the directors of The Coca Cola Company ("Coca Cola" or "the corporation") committed corporate waste by granting certain stock options to Coca Cola's Chief Executive Officer, Roberto C. Goizueta ("Goizueta"). The primary thrust of the motion is that the plaintiff failed to make a pre-suit demand upon the corporation's board of directors, as Court of Chancery Rule 23.1 requires. Defendants also contend that the plaintiffs have failed to state a claim upon which relief may be granted, and that the complaint should also be dismissed under Court of Chancery Rule 12 b(6). For the reasons next discussed, the Court concludes that a demand was required and that the complaint fails to state a cognizable legal claim. Therefore, the motion to dismiss will be granted.[1]

## I. FACTS

In 1991, Coca Cola adopted a Stock Option Plan, which was amended in 1995 ("the Plan"). The Plan was adopted by a board of directors, the majority of whom were independent, and it was also approved by Coca Cola's shareholders. Under the Plan, the options are granted at the market price as of the date of the grant, but cannot be exercised for a period of twelve months from the date of the grant. Thereafter, the options vest over a three year period. In limited circumstances, however, the options become exercisable immediately, specifically if: (1) the optionee's employment with the corporation is terminated by reason of the employee's death, disability, or retirement, or (2) there is a change of control of the company.

On April 19, 1995, Coca Cola's board of directors, acting through its compensation committee, awarded Goizueta options to purchase one million (1,000,000) shares of the corporation's stock, exercisable through April 19, 2005. The complaint, which relies upon (and quotes) the corporation's 1996 preliminary proxy statement, alleges that the compensation committee based that option award "... on the sustained performance of the Company since [Mr. Goizueta] assumed his current role in March, 1981 and the remarkable increase in market value of the Company during this period (nearly $69 billion)." Compl., ¶ 10.[2] Mr. Goizueta was eligible to retire at the time the option was granted, and had he done so the option would have

---

1. Because the motions are disposed of on Rule 23.1 and Rule 12 b(6) grounds, the Court does not reach the defendants' alternative argument that the plaintiff is barred from seeking monetary damages by virtue of the liability exculpation clause of Coca Cola's certificate of incorporation.

2. The facts set forth in this Opinion are derived from the complaint and are assumed to be true for purposes of these motions. *Grobow v. Perot,* Del.Supr., 539 A.2d 180, 187 (1988). That rule does not, however, automatically apply to documents incorporated into the complaint by reference. Where the incorporated document is a disclosure document such as a proxy statement, its contents may be relied upon to establish what was disclosed, but not the truth of the disclosures. *In re Santa Fe Pacific Corp. Shareholder Lit.,* Del.Supr., 669 A.2d 59, 69–70 (1995). But where, as here, the complaint itself assumes the factual truthfulness of the contents of the incorporated documents, the Court may (and here does) do likewise. Accordingly, for purposes of this motion, the Court assumes the truth of the quoted proxy disclosure reciting the Coca Cola board's purpose in granting the options to Goizueta in 1995.

been exercisable immediately.[3] Goizueta did not retire, however, and has continued to serve as Coca Cola's Chief Executive Officer.

## II. STANDARD OF REVIEW AND THE PARTIES' CONTENTIONS

### A. The Contentions

The plaintiff does not challenge the legal validity of the Plan or the manner of its adoption by the directors and shareholders. He attacks only the April, 1995 grant to Goizueta of options to purchase 1 million Coca Cola shares. The plaintiff claims that the grant of those options constituted corporate waste because the corporation received no consideration in exchange. He contends that Coca Cola received no consideration because the options were granted for past services that Goizueta was already required to perform and for which he already had been amply compensated.

The defendants respond that they committed no waste because a disinterested board of directors may, in a good faith exercise of its business judgment, award additional retroactive compensation, i.e., a "bonus," to a corporate executive for extraordinary services that substantially benefited the corporation. Moreover, defendants argue, the corporation received other forms of consideration, including Mr. Goizueta's continued performance of his duties and the inducement of other key employees to remain in the corporation's service and to perform at a high level, motivated by the prospect that at a future time they too might be similarly rewarded.

To this the plaintiff responds that (1) the board of directors could not lawfully award compensation retroactively to Goizueta, and (2) that the defendants cannot be heard to argue that consideration for the option grant consisted of inducing Goizueta and other key employees to remain in the company's employ and to perform future services. That is because, plaintiff argues, (a) in the proxy statement the board represented to share-

holders that the options were being awarded solely by reason of Goizueta's past services, and (b) the options could not have induced Goizueta to remain in the corporation's employ because the very day he was awarded the options, he could have retired and then immediately exercised them.

The plaintiff concedes that he made no pre-suit demand upon the directors to take corrective action, but claims that in the circumstances he was excused from the demand requirement. The defendants disagree. They contend that as a matter of law the complaint fails to satisfy the stringent pleading standard for a demand to be excused.

### B. The Applicable Standard

Under our well developed caselaw in this area, a derivative complaint must be dismissed unless it alleges with particularity facts demonstrating that demand would have been futile. Demand is considered futile, and will be excused, only if the particularized facts alleged in the complaint create a reasonable doubt (i.e., reason to doubt) that (1) the directors upon whom the demand would be made were disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Aronson v. Lewis, Del. Supr., 473 A.2d 805, 814 (1984); Grimes v. Donald, Del.Supr., 673 A.2d 1207, 1216 (1996). The plaintiff does not claim that the board failed to act in good faith, or that it had a disqualifying self-interest or lacked independence. Rather, he claims that the option grant itself was wasteful and not protected by the business judgment rule. Compl. ¶ 15. That being the claim, the broad issue is whether the complaint alleges, with particularity, facts creating a reasonable doubt that the board's decision to grant the 1995 option was entitled to the protection of the business judgment rule. See Aronson, 473 A.2d at 808.

---

**3.** Although the plaintiff characterizes as waste the grant of an option that accelerates upon retirement to employees who are at that time eligible to retire, courts have recognized that such provisions serve independent business purposes, such as assuring employees that there will

be no "retirement penalty" attached to options granted to them near the end of their employment, and thereby motivating them to perform at a high level throughout their career. See, e.g., Freedman v. Barrow, 427 F.Supp. 1129, 1156 (D.C.N.Y.1976).

To answer that question, the Court must also consider what standard is applicable in reviewing the plaintiff's assertion that he has pleaded cognizable claims of waste. Accordingly, the specific standard to be applied to the plaintiff's claim that demand was excused requires an amalgamation of the substantive test for waste and the procedural standard governing motions to dismiss under Rule 23.1. To state a cognizable claim for waste where there is no contention that the directors were interested or that shareholder ratification was improperly obtained, the well-pleaded allegations of the complaint must support the conclusion that "no person of ordinary, sound business judgment would say that the consideration received for the options was a fair exchange for the options granted." *Michelson v. Duncan*, Del.Supr., 407 A.2d 211, 224 (1979)[4]; *see also Grobow v. Perot*, 539 A.2d at 189 (plaintiff must allege facts showing that "what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth that which the corporation has paid")[5]. That is "an extreme test, very rarely satisfied by a shareholder plaintiff," because "if under the circumstances any reasonable person might conclude that the deal made sense, then the judicial inquiry ends." *Steiner v. Meyerson*, Del. Ch., C.A. No. 13139, Allen, C. (July 18, 1995), Mem. Op. at 2, 1995 WL 441999. As Chancellor Allen observed in *Steiner, supra* at p. 11:

> [T]he waste theory represents a theoretical exception to the statement very rarely encountered in the world of real transactions. There surely are cases of fraud; of unfair self dealing and, much more rarely negligence. But rarest of all—and indeed like Nessie, possibly non existent—would be the case of disinterested business people making non fraudulent deals (non-negligently) that meet the legal standard of waste!

■ Because that standard for waste and the procedural Rule 23.1 pleading standard prescribed by *Aronson* and its progeny must both be satisfied, the precise issue becomes whether the particularized factual allegations of the complaint create a reason to doubt that reasonable directors could have expected the corporation to benefit from the grant of the options to Goizueta. For the reasons now discussed, the Court concludes that the complaint fails to satisfy that high standard.

## III. *ANALYSIS*

■ Any analysis of the waste claim must begin with 8 *Del. C.* § 157. That statute authorizes a Delaware corporation to create and issue (*inter alia*) options to purchase its shares. It also provides that in the absence of actual fraud, "the judgment of the directors as to the consideration for the issuance of such ... options and the sufficiency thereof shall be conclusive." 8 *Del. C.* § 157. That is, so long as there is any consideration for the issuance of shares or options, the sufficiency of the consideration fixed by the directors cannot be challenged in the absence of actual fraud. Only where it is claimed that the issuance of shares or options was entirely without consideration will § 157 not operate as "a legal barrier to any claim for relief as to an illegal gift or waste of corporate assets in the issuance of stock options." *Michelson v. Duncan*, 407 A.2d at 224.

The plaintiff's claim is that Coca Cola received no consideration because the options were issued to compensate Goizueta for his past performance. As the plaintiff alleges, the stock options granted to Goizueta in this case took the form of additional compensation (or a "bonus") for services previously performed. Plaintiff claims that such additional compensation was waste or a gift because Goizueta was already contractually obligated to perform those services and had been compensated for doing so. In these circumstances, that allegation fails to state a cognizable claim for waste.

Normally, stock options issued to employees are made exercisable at some future date after their issuance, in order to motivate the recipient to continue to perform valuable service for the corporation. *See Beard*, 160 A.2d at 736–37; *Kerbs v. California Eastern Airways*, Del.Supr., 90 A.2d

---

4. Quoting *Kaufman v. Shoenberg*, Del. Ch., 91 A.2d 786, 791 (1952).

5. Quoting *Saxe v. Brady*, Del. Ch., 184 A.2d 602, 610 (1962).

652, 656 (1952). That is, the consideration for stock options is often the reasonable prospect of obtaining the employee's valued future services. But that is not the only permissible form of consideration for a grant of stock options. Under certain limited circumstances, stock options may also be issued as a form of compensation for an employee's past services. In *Blish v. Thompson Automatic Arms Corporation*, Del.Supr., 64 A.2d 581 (1948), the Supreme Court addressed the issue of whether retroactive compensation was proper, and stated:

> The appellant's argument [that the retroactive salary increase was improper] is based upon the general rule that once an officer's salary has been fixed for a given period the Directors cannot at a subsequent meeting raise the [executive's] salary and make their action retroactive. This is so, says the appellant, for the reason that the retroactive feature of the salary ... must be regarded as being without consideration, since the amount of salary to [the executive] had been fixed by previous agreement and the services had been performed.
>
> Conceding the general rule to be as stated, nevertheless, we find its application subject to two well recognized exceptions: (1) Where an implied contract is shown; (2) Where the amount awarded is not unreasonable in view of the services rendered.
>
> We conclude from the evidence that the services rendered by [the executive] were unusual in character and extraordinary, from which [the corporation] received great gains and profits; therefore, the ret-

roactive feature of [the executive's] increases in salary ... were proper under the second exception as noted above.

*Id.*, at 606–07 (citations omitted, materials in brackets added); *see also Fletcher Cyc Corp* ¶ 2140 (Perm Ed.). Nor is there any proscription against using options as a form of executive compensation. If a board may properly award a bonus in the form of cash, then *a fortiori* it may award an immediately exercisable option that is the equivalent of cash. *See Steiner v. Meyerson, supra,* at 18–20.

In this case, the pleaded facts establish (for present purposes) that reasonable, disinterested directors could have concluded—and in this instance did conclude—that Goizueta's past services were of that character and that the resulting benefit to the corporation was of that magnitude. *See* Compl., ¶ 10 (option award based "... on the sustained performance of the Company since [Mr. Goizueta] assumed his current role in March, 1981 and the remarkable increase in market value of the Company during this period (nearly $69 billion)"). This case, therefore, falls within a recognized exception to the common law rule that otherwise generally prohibits retroactive executive compensation. As thus viewed, the fact that the options might have become exercisable immediately had Goizueta chosen to retire is, from a legal standpoint, of no consequence.

For these reasons, the plaintiff's claim that the defendants' grant of stock options to Goizueta constituted waste is insufficient as a matter of law.[6] This Court cannot conclude

---

**6.** *See Steiner v. Meyerson, supra* at 19–20 (holding that "retaining the services of [the] person is not the only legitimate reason" to issue stock options, but rather that the grant of immediately exercisable options is not corporate waste if "there is some rational basis for directors to conclude that the amount and form of compensation is appropriate"); *Haft v. Dart Group Corp.*, 841 F.Supp. 549, 575 (D.Del.1993) (upholding issuance of stock made solely in recognition of recipient's prior service to the corporation); *Fletcher Cyc Corp* ¶ 2140 (Perm. Ed.) ("it has ... been suggested that corporate authority to grant past service benefits in the form of bonuses or pension may often have a favorable effect on the corporation as a whole").

Although plaintiff argues that at this procedural stage, the Court may not look beyond their allegations in the complaint that selectively quote portions of the proxy statement, the Court nonetheless observes that the proxy statement also stated that the Plan was adopted to advance the interests of the corporation, and to attract, retain, and motivate key employees. 1991 Stock Option Plan at 1. In *Beard v. Elster*, the Supreme Court noted that employees' knowledge of a proposed stock option plan "acted as an inducement to those employees to remain in the corporation's service," which constituted consideration. 160 A.2d at 738. Defendants contend that the knowledge of other key employees that they, like Mr. Goizueta, might similarly be rewarded, likewise induced them to remain in the

that a person of ordinary, sound business judgment would be unable to find that the consideration received by the corporation was a fair exchange for the options granted. Nor do the particularized allegations of the complaint create a reasonable doubt in that connection.

## IV. CONCLUSION

Because the facts alleged in the complaint establish that a reasonable person could conclude that the grant of the options to Mr. Goizueta made business sense, the complaint fails to state a legally sufficient claim for waste or to establish that a demand would have been futile. For these reasons the complaint will be dismissed under both Rules 12 b(6) and 23.1. **IT IS SO ORDERED.**

corporation's employ and to maximize their performance on its behalf. Given the basis for the Court's ruling on this motion, it is not necessary to address that contention.