**EFiled: Jun 30 2015 04:05PM EDT**
**Transaction ID 57479773**
**Case No. 9425-VCN**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

June 30, 2015

Joel Friedlander, Esquire
Christopher M. Foulds, Esquire
Friedlander & Gorris, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801

Brian C. Ralston, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19801

Raymond J. DiCamillo, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re: *Friedman v. Dolan*
C.A. No. 9425-VCN
Date Submitted: January 23, 2015

Dear Counsel:

It is hard to look at the facts of this case without going away troubled. A compensation committee with various ties to the controlling shareholder family awarded considerable executive compensation and benefits to the patriarch of that family and his son. Additionally, a board dominated by members of the controlling family approved non-executive director compensation, which accrued

to three family-member directors with qualifications and attendance records that have been called into question. Nonetheless, compensation decisions are not the expertise of trial judges, and the Court should not second-guess an independent compensation committee's business decisions that are not irrational. The Court also lacks a principled way to evaluate a director's decision to accept a position and her performance as a director. Although the amount of compensation and board composition raise some concern, that concern does not justify judicial intervention into that thicket here.

\* \* \* \* \*

Plaintiff Julie Friedman ("Friedman" or the "Plaintiff") is and has been a shareholder of Nominal Defendant Cablevision Systems Corporation ("Cablevision" or the "Company") at all times relevant to this litigation.[1] Cablevision, "a telecommunications and media company . . . . [serving] millions of

---

[1] Mot. for Intervention Pursuant to Del. Ct. Chancery Rule 24 ¶ 1. The Court granted Friedman's motion to intervene on February 10, 2015. Unless otherwise noted, the facts are drawn from the Verified Stockholder Derivative Complaint ("Compl.") and, for limited purposes, the public filings it incorporates. *See, e.g.*, *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006).

households and businesses in the New York metropolitan area,"[2] was founded by Defendant Charles F. Dolan ("Charles"). Charles has been Executive Chairman of Cablevision since 1985 and "is focused on 'setting the strategic direction of the Company.'"[3] He is also Executive Chairman of AMC Networks, Inc., a publicly traded company controlled by the Dolan family. His son, Defendant James L. Dolan ("James"), has been Cablevision's Chief Executive Officer ("CEO") since 1995 and a director since 1991. As CEO, James "is responsible for the day-to-day management of the Company."[4] He also serves as Executive Chairman of The Madison Square Garden Company ("MSG")—another company under the Dolan family's control—and sings in a band that "travels extensively" for performances.[5]

Charles's daughters, Defendants Kathleen M. Dolan ("Kathleen"), Deborah Dolan-Sweeney ("Deborah"), and Marianne Dolan Weber ("Maryanne," and collectively, the "Dolan Daughters" and, with their father and brother, the "Dolan

---

[2] Compl. ¶ 11. Cablevision is a Delaware corporation.
[3] Compl. ¶ 71 (quoting Aff. of Susan M. Hannigan, Esq. in Supp. of Compensation Committee Defs.' Mot. to Dismiss ("Hannigan Aff.") Ex. 2 ("2013 Proxy"), at 25). First names are used for convenience and to limit confusion. No disrespect is intended.
[4] Compl. ¶ 71.
[5] Compl. ¶ 69.

Defendants"), serve on Cablevision's board as non-employee directors. In Cablevision's 2013 annual proxy statement, the Dolan Daughters were said to be qualified as directors based on work at Dolan-family charitable foundations and a community center, as well as "'experience as . . . member[s] of Cablevision's founding family.'"[6]

Defendants Thomas V. Reifenheiser ("Reifenheiser"), John R. Ryan ("Ryan"), and Vincent Tese ("Tese," and collectively, the "Compensation Committee Defendants") comprise Cablevision's compensation committee. Committee chair Tese, seventy years old at the time of the complaint, has been a Cablevision director since 1996 and has been on the compensation committee since 2004.[7] He also serves as a director for MSG (where his brother works), but is retired and does not maintain full-time employment. Reifenheiser, seventy-seven

---

[6] Compl. ¶ 42 (quoting, as an example, 2013 Proxy 7).

[7] The Compensation Committee Defendants rely on the 2013 Proxy to provide a fuller picture of their current service and qualifications. *See* Compensation Committee Defs.' Opening Br. in Supp. of Their Mot. to Dismiss Compl. ("CCD OB") 7-9 (citing 2013 Proxy 4-5, 12). Plaintiff complains that "Defendants . . . repeatedly rely on facts outside the pleadings." Pl.'s Corrected Answering Br. in Opp'n to Defs.' Mots. to Dismiss Compl. ("PAB") 24. Any additional information in the public filings noted by the Court is included for completeness and does not change the Court's conclusions.

years old at the time of filing, has been a member of the board since 2002 and the compensation committee since 2007. He, too, is retired and does not maintain full-time employment. Finally, Ryan has been a director since 2002 and a compensation committee member since 2009. The compensation committee has been the subject of criticism over the years, from advisory firms and shareholders alike. A majority of Class A votes cast in 2010 and 2012 elections withheld support for the Compensation Committee Defendants.[8] In 2013, a majority of Class A votes opposed Tese's election, 38.9% opposed Ryan's, and 49.4% opposed Reifenheiser's.

Members of the Dolan family hold 100% of Cablevision's Class B stock and approximately 73% of Cablevision's voting power. Class B holders have ten votes per share on matters put to common vote and can elect 75% of Cablevision's

---

[8] The Dolans hold around four percent of the Class A stock. For context, the Court notes Defendants' argument that the 2010 vote preceded the contested compensation awards and that the complaint fails to mention that all of the Compensation Committee Defendants received a majority of "for" votes in 2011. Compensation Committee Defs.' Reply Br. in Supp. of Their Mot. to Dismiss Compl. 24 n.11 (citing Hannigan Aff. Ex. 5, at 2).

Defendants also offer public filings to show that a majority of the Class A stock not held by the Dolan family approved Cablevision's executive compensation in 2011 and 2014 advisory votes. CCD OB 16-17 (citing Hannigan Aff. Exs. 4-7).

directors as a class (as opposed to one vote per share and 25% of directors for Class A holders).[9]   They are also party to an agreement "that had the effect of causing the voting power of the Class B stockholders to be cast as a bloc[]" on matters subject to their class vote.[10]   "Cablevision has identified itself as a 'controlled company' under [New York Stock Exchange] rules" since adopting this agreement.[11]   As such, Cablevision does not have (or need) a nominating committee, and the incumbent directors serve that function under Cablevision's Corporate Governance Guidelines.   Despite receiving substantial withhold votes (including a majority of votes cast in 2010 and 2012), the Compensation Committee Defendants have continued to nominate themselves, and the full board has continued to approve those nominations.

The pending litigation asserts claims related to compensation awarded to the Dolan Defendants.  From fiscal years 2010 through 2012, Cablevision paid James

---

[9] Ten members of the sixteen-member board (as of the time of the complaint), including the Dolan Defendants, are part of the Dolan family.  The Compensation Committee Defendants are Class A directors.

[10] Compl. ¶ 23.

[11] Compl. ¶ 26.

and Charles compensation worth $41.18 million and $40.27 million, respectively.[12]

The executive compensation packages for James and Charles included "a base

salary, perquisites, annual cash bonuses, and long-term incentive awards."[13] The

perquisites, including a company car and driver and a security program, were

valued at $476,000 and $792,000. Also included was a March 2012 "'special'

one-time grant of stock options," awarding James and Charles options valued at

$6.85 and $7.09 million.[14] These awards were purportedly needed to "incentivize

and retain" officers and employees because a failure to meet certain targets was

expected to affect performance awards.[15] Furthermore, on February 27, 2013,

James signed a letter agreement that renewed certain terms of his employment and

increased his compensation. The employment agreement retained a modified

single-trigger provision. In other words, Cablevision "will pay James severance if

---

[12] These figures do not include compensation for service at other companies controlled by the Dolan family but do include the value of the 2012 stock option awards. *See* 2013 Proxy 39; CCD OB 11 n.4. The numbers in the 2013 Proxy are slightly, but not materially, different from those in the complaint.
[13] Compl. ¶ 53.
[14] Compl. ¶ 73.
[15] Compl. ¶ 74 (internal quotation marks omitted). Public filings offer greater detail on the reasons for the options. *See* CCD OB 13-15 (citing, for example, 2013 Proxy 31, 39).

he chooses to terminate his employment for any reason within a certain period of time after a change in control."[16]

The Compensation Committee Defendants set James's compensation in a process that "allowed James to 'assist the Compensation Committee and its compensation consultant in determining the Company's core peer group and the peer group comparisons.'"[17] The Compensation Committee Defendants considered James's suggestions and purportedly "selected fourteen publicly traded companies in the same general industry or industries as the Company as well as companies of similar size and business mix."[18] An additional selection of peer companies by Institutional Shareholder Service, Inc. ("ISS") yields a pool of twenty-six companies for comparison.[19] Of these "peer group" companies,

---

[16] Compl. ¶ 82 (emphasis omitted). Plaintiff also expresses concern that any change in control will depend on the Dolan family's votes.

[17] Compl. ¶ 95 (quoting, for example, 2013 Proxy 22). Class A shareholders had no real say in limiting James's and Charles's compensation. For one, "[s]tockholder-approved equity compensation plan[s]" have been approved through Dolan family votes. Compl. ¶ 97. Proxy statements provide more detail on the compensation committee's process. *See* CCD OB 11-13 (citing, for example, 2013 Proxy 21-22).

[18] Compl. ¶ 56 (internal quotation marks omitted).

[19] The complaint does not state that the compensation committee relied upon the ISS sample group. Plaintiff provides the extra data for this litigation. *See* CCD

eighteen had market capitalizations of over $10 billion (as of January 2014), and the group's average total revenue (over fiscal years 2010 through 2012) was $30.87 billion. By comparison, Cablevision had a market capitalization of $4.39 billion and $19.58 billion in revenue. Its stockholder returns were also comparatively low. Of the seventeen peer companies with less than $30 billion in market capitalization, only two paid their CEOs more than Cablevision did.

To set Charles's compensation, the Compensation Committee Defendants decided "that as a result of [Charles's] important role . . . , an appropriate general guideline for [Charles's] target total direct compensation . . . was slightly below the target total direct compensation of the Chief Executive Officer of the Company."[20] Even Charles earned more than fourteen (of seventeen) CEOs at the peer companies with a market capitalization below $30 billion.

In contrast, the entire board set the compensation for Cablevision's non-employee directors (including the Dolan Daughters). Total compensation for fiscal years 2011 and 2012 consisted of a base fee, restricted stock, sums for attendance

OB 29-30. For additional comparisons of the peer companies, see paragraphs 60 through 67 of the complaint.

[20] Compl. ¶ 96 (quoting, for example, 2013 Proxy 25).

(whether in-person or by telephone) at meetings, and perquisites. The Company's Corporate Governance Guidelines encourage directors to "make every effort to attend meetings" and include commitment to board matters as a nomination criterion.[21] However, Kathleen received compensation valued at $340,544 over those two years, corresponding to participation in three (of six) meetings, by telephone, in fiscal year 2012.[22] Deborah received $367,863 and Marianne received $374,455 over the same time—each attended three meetings in person and one meeting telephonically in fiscal year 2012. Kathleen and Deborah did not attend the 2012 Annual Meeting of Stockholders.

Plaintiff filed this action to remedy the alleged harms primarily through damages and disgorgement;[23] Defendants moved to dismiss pursuant to Court of Chancery Rule 12(b)(6). Plaintiff opposes the motions to dismiss and alternatively asks for leave to amend her complaint.

---

[21] Compl. ¶ 38 (internal quotation marks omitted).
[22] Plaintiff sets forth corrected observations about fiscal year 2011 attendance in her answering brief. PAB 7 n.3.
[23] Friedman intervened in this action after the original complainant lost standing to assert the claims.

\* \* \* \* \*

In her derivative complaint,[24] Plaintiff first asserts breach of fiduciary duty claims against James and Charles as officers and controllers. They are alleged to have breached the duties of loyalty and good faith by causing Cablevision to award and for personally accepting—through substantively and procedurally lacking transactions—compensation, stock options, and perquisites. James is further faulted for negotiating his amended employment agreement. In her second count, Plaintiff alleges that the Dolan Daughters breached duties of loyalty and good faith as directors and controllers. They purportedly are responsible for causing Cablevision to award and personally accepting high compensation "despite . . . virtually non-existent participation as . . . Board member[s]."[25] Count III advances breach of fiduciary duty claims against the Compensation Committee Defendants for, in bad faith, (a) awarding James and Charles compensation in a manner not entirely fair to the corporation, (b) granting stock options to James and Charles, and (c) accepting the February 2013 letter agreement. Finally, Count IV asserts

---

[24] Defendants have not challenged Plaintiff's demand futility contentions.
[25] Compl. ¶¶ 118-20.

waste by the Compensation Committee Defendants in awarding, and by James and Charles in causing and accepting, the March 2012 stock options.

Moving to dismiss the complaint pursuant to Court of Chancery Rule 12(b)(6), Defendants[26] emphasize that the compensation committee was independent and acted in good faith, thus receiving the protection of the business judgment rule. More precisely, they argue that Plaintiff's well-pleaded complaint has not rebutted the presumption of the business judgment rule and that the awards, including the stock options, were reasonable. As such, James and Charles cannot have breached fiduciary duties by accepting compensation awarded through a process that was within the compensation committee's business judgment. They add that the Dolan Daughters could not violate fiduciary duties by receiving standard non-employee director compensation, missing a number of meetings, or accepting positions for which they are allegedly unqualified absent a general failure to perform their duties or sufficient pleadings about what they personally did wrong. With respect to the waste claims, Defendants emphasize the stringent

---

[26] The Dolan Defendants submitted their own briefs but incorporated relevant arguments made by the Compensation Committee Defendants. The Court generally will not distinguish between the arguments made by the two sets of defendants.

standards by which such claims are evaluated and the "built-in incentive for the recipients of options"[27] as consideration.

Plaintiff, in opposition, rejects application of the business judgment rule. Her rationale for entire fairness review is based on the premise that "[t]ransactions between controllers and a controlled company are reviewed under entire fairness, regardless of whether the challenged transaction is approved by a committee or whether the challenged transaction is a merger or non-merger."[28] Given the entire fairness standard, Plaintiff claims to have met the minimal burden of suggesting unfairness. She also asserts that the business judgment rule does not apply because of the composition of the compensation committee and the full board. Plaintiff places the burden of establishing independence and effectiveness on Defendants and asks the Court to look at all of the allegations together. Finally, her waste claims relate to granting (and causing and accepting) special option awards when James and Charles had failed to meet goals and would not need any incentive to remain with Cablevision.

---

[27] Opening Br. in Supp. of Dolan Defs.' Mot. to Dismiss Compl. Pursuant to Ct. of Chancery Rule 12(b)(6).
[28] PAB 27.

In reply, Defendants reiterate that the business judgment rule applies, distinguishing between mergers and compensation contexts, as well as between controlling and merely participating in decision-making. They caution that applying entire fairness here would eliminate incentives to employ special committees and interfere with corporate affairs. Pressing ahead with the business judgment rule, Defendants argue that Plaintiff has not met her burden to plead a lack of independence, or bad faith, of the Compensation Committee Defendants. It would follow that James and Charles, accepting their compensation, did not breach fiduciary duties. Nor, they add, does the law support a breach of fiduciary duty in accepting positions and compensation as narrowly pled by Plaintiff.[29] Finally, given the compensation committee's reasonable decision to encourage and retain employees (and no guarantee that James and Charles would continue to work as executives), Defendants submit that there has not been waste.

---

[29] As the Dolan Defendants note, the complaint does not challenge the level of the non-employee director compensation generally. Plaintiff also does not assert that the Dolan Daughters violated any duties as board members approving the general package.

\* \* \* \* \*

A. *The Motion to Dismiss Standard*

On a motion to dismiss pursuant to Court of Chancery Rule 12(b)(6), the Court takes the well-pleaded facts in the complaint as true, draws reasonable inferences in favor of the non-moving party, and denies the motion "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[30] The standard is plaintiff-friendly, but the Court need not accept "conclusory allegations without specific supporting factual allegations" or "every strained interpretation of the allegations proposed."[31]

B. *The Fiduciary Duty Claims*

    1. The Compensation Committee Defendants

The Court begins its analysis with the fiduciary duty claims against the Compensation Committee Defendants because they have broader implications for the fiduciary duty claims against James and Charles.[32] A board's decision to award

---

[30] *Gen. Motors*, 897 A.2d at 168 (internal quotation marks omitted).

[31] *Id.* (internal quotation marks omitted).

[32] Perhaps allegations about excessive compensation fit better under the waste framework, or waste simply "is a subset of good faith under the umbrella of the duty of loyalty." *See Se. Pa. Transp. Auth. v. Abbvie Inc.*, 2015 WL 1753033, at

executive compensation to others is initially protected by the presumptions of the

business judgment rule.[33] To survive a motion to dismiss,

> [a] plaintiff[] must show either that the board or committee that
> approved the compensation lacked independence (in which case the
> burden shifts to the defendant director to show that the compensation
> was objectively reasonable), or to plead facts sufficient to show that
> the board or committee lacked good faith in making the award.
> Assuming that this standard is met, plaintiffs need only allege some
> specific facts suggesting unfairness in the transaction in order to shift
> the burden of proof to defendants to show that the transaction was
> entirely fair.[34]

---

[33] *14 n.114 (Del. Ch. Apr. 15, 2015) (noting the overlap with some degree of caution); *see also White v. Panic*, 783 A.2d 543, 553-54 & n.36 (Del. 2001) (observing the "similar" standards and adopting a waste analysis where the claims were "unclear"). Nonetheless, the Court keeps with the order of Plaintiff's complaint and addresses her fiduciary duty claims, followed by her waste claims relating to the option awards.

[33] Plaintiff does not suggest that the Compensation Committee Defendants are interested in the compensation paid to James or Charles. This discussion about compensation broadly includes options, perquisites, and James's employment agreement.

[34] *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 589 (Del. Ch. 2007) (footnote omitted). In *Tyson*, "the Tyson family ha[d] at all times kept the company under its power and direction." *Id.* at 571. The Court elaborated the above standard in the process of denying the motion to dismiss certain fiduciary duty claims against directors, and it also applied the business judgment rule to dismiss a claim about a consulting contract with a member of the controlling family. *Id.* at 587-90.

Delaware courts are hesitant to scrutinize executive compensation decisions, recognizing that "[i]t is the essence of business judgment for a board to determine if a particular individual warrant[s] large amounts of money."[35] Entire fairness is not the default standard for compensation awarded by an independent board or committee, even when a controller is at the helm of the company.[36] The significance of an independent committee is well-recognized by our case law.[37]

Plaintiff suggests that entire fairness review must apply because a controller (namely the Dolan family) was on both sides of the transactions. She relies on cases applying entire fairness review to transactions involving a controlling shareholder, particularly non-merger cases.[38] Nonetheless, Defendants convincingly distinguish an independent committee's compensation decisions from

---

[35] *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (second alteration in original) (internal quotation marks omitted).

[36] *See supra* note 34. Defendants do not rely on the effects of a shareholder vote.

[37] *See, e.g.*, *Ravenswood Inv. Co., L.P. v. Winmill*, 2011 WL 2176478, at *4 (Del. Ch. May 31, 2011) ("[T]he board bears the burden of proving that the salary and bonuses they pay themselves as officers are entirely fair to the company unless the board employs an independent compensation committee or submits the compensation plan to shareholders for approval.").

[38] *See, e.g.*, *Monroe Cnty. Empls.' Ret. Sys. v. Carlson*, 2010 WL 2376890, at *1 (Del. Ch. June 7, 2010); *T. Rowe Price Recovery Fund, L.P. v. Rubin*, 770 A.2d 536, 552 (Del. Ch. 2000).

other matters warranting default entire fairness review. For example, major concerns in applying entire fairness review are informational advantages and coercion.[39] The complaint does not support its allegations of *leveraging* control over the compensation committee with a factual basis to make that inference, and it is hard to imagine a material informational advantage James and Charles held about the value of their services. Additionally, the Court hesitates to endorse the principle that every controlled company, regardless of use of an independent committee, must demonstrate the entire fairness of its executive compensation in court whenever questioned by a shareholder. It is especially undesirable to make such a pronouncement here, where annual compensation is not a "transformative" or major decision.[40] In light of *Tyson* and the nature of executive compensation decisions, the Court will apply the business judgment rule initially.

---

[39] *See In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 441-43 (Del. Ch. 2002).

[40] At oral argument, Plaintiff contended that recurring decisions (such as annual compensation) should receive more scrutiny than discrete transactions (such as a merger). Oral Arg. Defs.' Mots. to Dismiss Tr. ("Oral Arg. Tr.") 58. Plaintiff also cites legal scholarship to caution that controllers can abuse power through compensation and employment decisions. PAB 33 n.6. Although there might be concerns about the extent to which negotiations are truly at arm's-length, our law—*Tyson* is a persuasive example—respects the judgment of independent directors. Moreover, reflexively reviewing decisions of independent directors who

Directors are presumed to be independent, and it is ultimately Plaintiff's burden to "demonstrate that the director is beholden to the controlling party or so under [the controller's] influence that [the director's] discretion would be sterilized."[41] To overcome the presumption, it is not enough to observe that a director has some relation to a party benefiting from the decision. At this stage, a plaintiff must make provable allegations that, at a minimum, permit a reasonable inference that a relationship or tie is material to the particular defendant whose independence she is challenging.[42] This is not a novel concept. The fact of

---

serve in the often difficult environment of controlled corporations would offer little benefit to those corporations or their shareholders.

[41] *In re MFW S'holders Litig.*, 67 A.3d 496, 509 (Del. Ch. 2013) (alterations in original) (internal quotation marks omitted), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014).

[42] *See id.* at 509-10 (explaining, although on a motion for summary judgment, that "a plaintiff seeking to show that a director was not independent must meet a materiality standard").

It is suggested that Defendants cannot rely on authority grappling with Rule 23.1 demand futility here, where there is no dispute that demand is excused. PAB 23. While the Court is conscious of this distinction, the question is still whether the Compensation Committee Defendants were independent. The difference is in the particularity with which the claims must be pleaded. *See, e.g.*, *Tyson*, 919 A.2d at 582.

compensation, even from both a parent and a subsidiary company, is not enough.[43]

Neither long-term board service[44] nor the mere fact that one was appointed by a controller suffices.[45] Similarly, being retired or having attained a certain age does not cast a reasonable doubt on independence.[46] Close familial ties, such as those

---

[43] *In re The Limited, Inc.*, 2002 WL 537692, at *5 (Del. Ch. Mar. 27, 2002); *In re Walt Disney Co. Deriv. Litig.* ("*Disney I*"), 731 A.2d 342, 357, 360 (Del. Ch. 1998), *aff'd in part and rev'd in part sub nom. Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[44] *In re BJ's Wholesale Club, Inc. S'holders Litig.*, 2013 WL 396202, at *6 n.63 (Del. Ch. Jan. 31, 2013) (explaining that allegations of "nearly twenty years of Board service alongside [one director] and a long-term relationship with [another director] . . . . do[] not raise a reasonable doubt as to the independence of a director under Delaware law" (citation and internal quotation marks omitted)).

Assessment of a director's independence is, of course, contextual. Extended years of service on the board of a controlled corporation warrant careful attention. There is something of a concern that by 2010, Tese had served on the board with James and Charles for nearly fifteen years. Regardless, Tese was only one of three approving directors. Plaintiff has the burden to make pleadings that raise a reasonably conceivable challenge to the independence of a majority of the Compensation Committee Defendants. She has not met that burden, but Defendants may be testing the limits of our law.

[45] *Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984) ("[I]t is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director."), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[46] *See, e.g.*, *Kaplan v. Wyatt*, 484 A.2d 501, 512 (Del. Ch. 1984) (noting no challenge to the independence of a special litigation committee member who was a retired lawyer and certified public accountant), *aff'd*, 499 A.2d 1184 (Del. 1985);

between parent and child, can prevent a director from acting independently.[47]

Again, the test for independence generally asks whether, based on the alleged

conflict, "the director is unable to base his or her decisions on the corporate merits

of the issue before the board."[48]

In the absence of a challenge to independence, Plaintiff can state a claim by

raising a reasonable inference that the directors acted in bad faith. To succeed, she

must essentially rebut the business judgment rule with fact-based allegations that

"no person could possibly authorize such a transaction if he or she were attempting

---

*cf. Aronson*, 473 A.2d at 817-18 (disagreeing with the court below that the plaintiff had adequately pleaded demand futility based on waste arising from a consulting agreement with a seventy-five-year-old stockholder and director, distinguishing a case that found waste for a consulting arrangement where, among other factors, "the former president/director was a 70 year old stroke victim . . . and the contract was silent as to continued employment in the event that the retired president/director again became incapacitated and unable to perform his duties"). This Court also has rejected the allegation that an individual who otherwise earns a low salary in comparison to her compensation as a director loses independence by that fact alone. *Disney I*, 731 A.2d at 359-60.

[47] *In re China Agritech, Inc. S'holder Deriv. Litig.*, 2013 WL 2181514, at *20 (Del. Ch. May 21, 2013). *But see In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 823 (Del. Ch. 2005) (drawing upon the New York Stock Exchange Corporate Governance rules and finding no disabling conflict as the director's son was not alleged to be an executive officer or to live in the same household), *aff'd*, 906 A.2d 766 (Del. 2006).

[48] *China Agritech*, 2013 WL 2181514, at *20 (internal quotation marks omitted).

in *good faith* to meet their duty."[49] Allegations that another course of conduct was reasonable or better do not state a claim.[50] Bad faith requires some level of culpability.

The fact-based allegations challenging the Compensation Committee Defendants' independence are long-term board service, service at other Dolan-controlled entities, age, retirement status, a sibling's employment, continued self-nomination with board approval, and the fact of the challenged awards. Unfortunately for Plaintiff, long-term service or relationships, compensation itself, and appointment by a controller do not necessarily rebut the business judgment rule.[51] Plaintiff must provide a basis to find that these alleged conflicts are material such that they would prevail over the directors' business judgment. That the Compensation Committee Defendants did not acquiesce to majority withhold votes does not indicate a conflict, and shareholders fairly knew that Cablevision is

---

[49] *Tyson*, 919 A.2d at 592 (internal quotation marks omitted); *accord Leung v. Schuler*, 2000 WL 1478538, at *6 (Del. Ch. Oct. 2, 2000), *aff'd*, 783 A.2d 124 (Del. 2001) (TABLE).

[50] *See, e.g.*, *Seinfeld v. Slager*, 2012 WL 2501105, at *14 (Del. Ch. June 29, 2012) ("[T]he Plaintiff mainly disagrees with a business decision by the Board; this disagreement does not state a cognizable claim.").

[51] *See supra* notes 42-45 and accompanying text.

a controlled company with certain election processes.[52] It is not reasonable to infer that age and retirement defeated independence—Plaintiff has not made fact-based allegations suggesting that the Compensation Committee Defendants had infirmities or were dependent on their compensation.[53] Additionally, there are no allegations of how Tese's decisions were tied to his brother's general employment that would lead the Court to deem his discretion sterilized. Concluding that the Compensation Committee Defendants lacked independence just because they approved the contested awards would be "circular."[54] This is not a context where Defendants must prove the efficacy of a special committee, and the totality of the well-pleaded complaint does not make a reasonably conceivable case that the directors wanted to remain on the board so much that they sacrificed their

---

[52] The Dolan Defendants add that plurality votes are generally sufficient to elect directors under Delaware law and that Plaintiff has not made allegations of wrongdoing in the election process. *See* Reply Br. in Supp. of Dolan Defs.' Mot. to Dismiss Compl. Pursuant to Ct. of Chancery Rule 12(b)(6) ("DD RB") 6 (citing 8 *Del. C.* § 216(3)).

[53] It is conclusory to argue that the Compensation Committee Defendants were dependent on their director compensation because they had retired from full-time employment (or worked in the non-profit sector). The Court need not even reach the statements the Compensation Committee Defendants offer about their employment histories. There is insufficient basis for concern about the directors' livelihoods.

[54] *See Tyson*, 919 A.2d at 588.

professional integrity. Plaintiff's allegations that the compensation committee could not "say no"[55] are conclusory.

Thus, the remaining challenge would be bad faith. There was no violation of positive law, and there are no allegations of utter failure to fulfill responsibilities. The Compensation Committee Defendants had no obligation to step down when a majority of Class A shareholders did not vote in their favor (or to seek approval for every compensation and governance decision). Given the above discussion of independence, there is no substance to the contention that the Compensation Committee Defendants were acting out of an improper motive to benefit James and Charles. No other theory of improper motive has been developed. The ISS sample and Cablevision's sample of peer companies are not exactly the same, but significant overlap prevents a finding that the compensation committee's reliance on its sample was inexplicable.[56] A board is not forbidden from seeking

---

[55] Oral Arg. Tr. 52-54.

[56] The market capitalization range of Cablevision's sample is from $274.59 billion to $4.72 billion (using data from 2014); the range of ISS's sample is from $103 billion to $2.96 billion. *See* Compl. ¶ 60. If one takes out the highest and lowest numbers for each sample, the overlap is clearer: the new ranges would be from $85.45 billion to $4.84 billion for the Cablevision sample and from $85.45 billion to $4.1 billion for the ISS sample.

management's input in compensation decisions,[57] and the Compensation

Committee Defendants retained a compensation consultant.[58] The Court has no

reason to believe, from the complaint, that the compensation decisions were

uninformed, hastily made, or manipulated by James and Charles.

Regarding the amount of compensation, the Court is poorly equipped to

determine how much the services of an executive are worth. Though undeniably

high, James's compensation was within the range of compensation paid to CEOs

by arguably comparable companies.[59] Charles is not a CEO, but he founded

Cablevision, and the complaint reflects a successful career. The Court also is not

---

[57] *See In re Goldman Sachs Gp., Inc. S'holder Litig.*, 2011 WL 4826104, at \*3, \*15 (Del. Ch. Oct. 12, 2011) (dismissing claims for failure to allege demand futility and noting that the "pleadings indicate[d] that the board adequately informed itself before making a decision on compensation"); *Tyson*, 919 A.2d at 591-92 ("That the Committee was required to consult with other corporate officers is irrelevant: the committee admittedly retained independent authority and discretion to approve or modify whatever it received as a recommendation.").

[58] Plaintiff submits that the Court cannot accept Defendants' statements that the compensation consultant (in each of the relevant years) was an outside, independent advisor. PAB 41-45. She adds assertions that Defendants relied on consultants who worked for other Dolan entities. The motion to dismiss standard may be plaintiff-friendly, but it is Plaintiff's burden to set forth allegations to warrant scrutiny of the Compensation Committee Defendants' decision to rely on an advisor.

[59] *See* Compl. ¶ 64 (showing higher compensation at one company chosen by Cablevision and one company chosen by ISS).

aware of authority that suspects bad faith in not discounting compensation when executives have other obligations. Reasonable minds could differ, but that is not a reason to find bad faith. That James was given various severance benefits and kept a modified single-trigger provision, too, is not inexplicable. Severance agreements can be used to ensure cooperation from executives or to secure other benefits.[60] Thus, Plaintiff has failed to rebut the business judgment rule. The fiduciary duty claims against the Compensation Committee Defendants are dismissed. Plaintiff cannot recover against the Compensation Committee Defendants unless her remaining waste contentions survive the motion to dismiss.[61]

---

[60] *See Zucker v. Andreessen*, 2012 WL 2366448, at *8-9 (Del. Ch. June 21, 2012) (discussing consideration for a severance agreement).

[61] *See In re Walt Disney Co. Deriv. Litig.* ("*Disney II*"), 906 A.2d 27, 73-74 (Del. 2006). Furthermore, Cablevision's charter contains a Section 102(b)(7) provision. Hannigan Aff. Ex. 9, at 28. "[P]laintiffs must plead a non-exculpated claim for breach of fiduciary duty against an independent director protected by an exculpatory charter provision, or that director will be entitled to be dismissed from the suit." *In re Cornerstone Therapeutics Inc, S'holder Litig.*, -- A.3d --, 2015 WL 2394045, at *5 (Del. May 14, 2015). Plaintiff argues that "*Cornerstone* did nothing to alter" its (and Defendants') cases about the applicability of entire fairness. Letter from Joel Friedlander, Esq. 1-2, May 20, 2015. In fact, the Court's thinking has not changed since *Cornerstone* was issued. The Court still is not convinced that compensation approved by an independent committee receives entire fairness review by default (or that the business judgment rule has been rebutted with respect to the Compensation Committee Defendants). It is notable

  2. James and Charles

  Plaintiff next argues that James and Charles violated their fiduciary duties of loyalty and good faith by causing and accepting various compensation awards that were unfair to Cablevision.[62]  Defendants emphasize that accepting an award from an independent committee acting within its business judgment does not breach fiduciary duties.  To survive the motion(s) to dismiss, Plaintiff must make sufficient allegations that a fiduciary "preferr[ed] the adverse self-interest of the fiduciary or of a related person to the interest of the corporation" or engaged in conduct "qualitatively more culpable than gross negligence."[63]  Prominent examples of the latter include "intentionally act[ing] with a purpose other than that of advancing the best interests of the corporation"[64] and, in the case of a failure to act, "knowingly and completely fail[ing] to undertake . . . responsibilities."[65]  Some plaintiffs have succeeded at the motion to dismiss stage by "demonstrat[ing]

_____

that the basic non-employee compensation package was not challenged in the complaint.  Again, the Court does not decide whether waste necessarily implicates the duty of loyalty.

[62] This discussion also uses the term "compensation" broadly.

[63] *Disney II*, 906 A.2d at 66.

[64] *Id.* at 67 (internal quotation marks omitted).

[65] *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243-44 (Del. 2009).

that the fiduciary's actions were so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith."[66]

In the executive compensation context, the Court typically defers to the business judgment of independent directors making compensation decisions. The Court has declined to scrutinize mere acceptance of compensation determined by an independent board or committee.[67] An officer or a director can breach fiduciary

---

[66] *In re Novell, Inc. S'holder Litig.*, 2013 WL 322560, at *10 (Del. Ch. Jan. 3, 2013) (internal quotation marks omitted).

[67] *See, e.g.*, *Wayne Cnty. Empls.' Ret. Sys. v. Corti*, 2009 WL 2219260, at *12 (Del. Ch. July 24, 2009) (dismissing duty of loyalty claims against insider directors for securing employment benefits in a merger they largely negotiated because the "plaintiff ha[d] not alleged facts that rebut[ted] the presumption that the members of [the company's] compensation committee and the [nominating and corporate governance committee] exercised their independent and disinterested business judgment in approving the employment agreements"), *aff'd*, 996 A.2d 795 (Del. 2010) (TABLE); *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 758 (Del. Ch. 2005) ("Ovitz did possess fiduciary duties as a director and officer while these decisions were made, but by not improperly interjecting himself into the corporation's decisionmaking process nor manipulating that process, he did not breach the fiduciary duties he possessed in that unique circumstance."), *aff'd*, 906 A.2d 27 (Del. 2006).

duties, however, by accepting compensation that is clearly improper[68] or by wrongfully influencing compensation decisions.[69]

The acts supporting Plaintiff's theory appear to be causing outcomes by the reality of control, James's involvement in selecting a group of peer companies, James's negotiating his employment renewal contract, and James and Charles's acceptance of the compensation committee's awards. Again, the existence of a controller does not defeat the presumption that directors act in an independent, disinterested manner, and the fiduciary duty claims against the Compensation Committee Defendants have failed for the reasons above. James or Charles did not award themselves compensation, and there is no basis in the complaint to infer that either of the two engaged in behavior that coerced or influenced the Compensation Committee Defendants to act inconsistently with their responsibilities as directors. Negotiating with and providing opinions to an independent committee are not inherently wrongful acts, and they do not support a reasonable inference of

---

[68] *See, e.g.*, *Pfeiffer v. Leedle*, 2013 WL 5988416, at *10 (Del. Ch. Nov. 8, 2013) ("As to the breach of fiduciary duty claim, the Complaint supports a reasonable inference that Leedle knew or should have known that his receipt of more than 150,000 Stock Options in a year violated the [company's stock incentive plan].").
[69] *See supra* note 67.

wrongdoing in the current context.[70]  Additionally, it is not wrongful to have other professional commitments.  These facts may exist in a context where other facts color and inform a finding of wrongdoing.  For example, providing opinions to an independent committee could be wrongful if the analysis were supported by other facts warranting an inference of improper influence.  That is not the case here. Thus, Plaintiff has not stated a claim that James and Charles breached any fiduciary duties regarding their compensation awards.

3.    The Dolan Daughters

Next, Plaintiff challenges the Dolan Daughters for causing and for accepting their compensation despite minimal participation and lack of qualifications.[71] Although Plaintiff's briefing claims that Defendants must establish the entire fairness of the Dolan Daughters' service and pay, the well-pleaded complaint essentially asks the Court to adjudicate fiduciary duty claims based on the Dolan

---

[70] Independent committees are formed to deal with conflicts.  *See Cornerstone*, 2015 WL 2394045, at *8 ("For more than a generation, our law has recognized that the negotiating efforts of independent directors can help to secure transactions with controlling stockholders that are favorable to the minority.").

[71]  The complaint may contain references to other aspects of the Dolan Daughters' appointment, but the focus is on whether the Dolan Daughters should disgorge their compensation (or, presumably, be removed from the board).  *See* Compl. ¶¶ 118-21 & 45.

Daughters' degree of effort and competence of service. It bears repeating that the complaint does not challenge the basic non-employee director compensation package.[72] Neither does it assert claims against the overall board in connection with those awards and any appointments. There is no allegation that the Dolan Daughters received compensation for any meetings that they did not attend. Finally, the complaint does not say that the Dolan Daughters wholly failed to fulfill their responsibilities.

Plaintiff offers no authority regarding whether a failure to attend a certain number of meetings is culpable and how the Court is to evaluate a director's qualifications. However, the Delaware General Corporation Law (the "DGCL") allows directors to participate in meetings via telephone.[73] The DGCL does not

---

[72] *See* DD RB 11-12 (highlighting the narrowness of the claims). Defendants persuasively explain that "because [the Dolan Daughters] are paid the same as everyone else, the plaintiffs aren't challenging the level of board comp. per se" but rather meeting attendance and qualifications to serve. Oral Arg. Tr. 30. As such, authority requiring directors to prove the fairness of their compensation does not apply. *See, e.g.*, *Calma ex rel. Citrix Sys., Inc. v. Templeton*, -- A.3d --, 2015 WL 2265535, at *8 (Del. Ch. Apr. 30, 2015); *Cambridge Ret. Sys. v. Bosnjak*, 2014 WL 2930869, at *7 (Del. Ch. June 26, 2014).

[73] Section 141(i) expressly provides that, unless otherwise prohibited, a director may participate in meetings by phone and "participation . . . pursuant to this subsection shall constitute presence in person at the meeting." 8 *Del. C.* § 141(i).

discuss minimum levels of attendance, committee service, or professional experience. Rather, it provides the board with broad discretion to manage corporate affairs (though limited by the law generally, the certificate of incorporation, and the bylaws).[74] Section 225 allows the Court to remove a director after there has been a finding of a breach of the duty of loyalty,[75] but the Court has demonstrated reluctance to remove directors absent clear authority to do so.[76] This provides some guidance on the Court's ability to weigh a director's fitness to serve. Also applicable to the claims against the Dolan Daughters are the general duty of loyalty and good faith standards elaborated *supra*.

The Dolan Daughters are non-employee directors and were paid according to the standard compensation package. As there is no count outlining a breach of fiduciary duties for the non-employee director compensation awarded generally, the Court views Plaintiff's challenge as limited to the Dolan Daughters' level of director participation and credentials. First, regarding participation, directors have various responsibilities, not all of which are performed at meetings. The Dolan

---

[74] *See* 8 *Del. C.* § 141.

[75] 8 *Del. C.* § 225(c).

[76] *See Shocking Techs., Inc. v. Michael*, 2012 WL 1352431, at *1 & n.5 (Del. Ch. Apr. 10, 2012).

Daughters did not attend at most half of the board's meetings in a given year. Although Cablevision encourages director participation (and the Court will not deny its importance), missing at most half of the board's meetings does not show self-dealing, an improper motive, or a complete failure to fulfill one's responsibilities as a director. The Court does not have a bright line rule, but the complaint does not offer a reasonably conceivable set of facts to support disloyalty or bad faith through non-participation.

Secondly, judges are not equipped to evaluate whether an individual is qualified to serve on a given board. Plaintiff has not made pleadings that could establish incompetence, an improper motive, or a complete disregard of duty. There is no obligation to draw the conclusion that family ties and experience at non-profits are inadequate qualifications to serve as a director of a public company and, thus, to decline an appointment.[77] There is also no reasonably conceivable breach of the duty of loyalty by the Dolan Daughters stated in the complaint. Even if the Court were to consider a belated suggestion that the Dolan Daughters

---

[77] *Cf. Disney I*, 731 A.2d at 359-60 (taking no issue with the independence of a school principal serving on the board of the Walt Disney Company). The Court is reluctant to create a standard whereby any director related to a controller must prove her worth and qualifications in court.

improperly influenced the level of non-employee compensation, the allegations are not rooted in fact and reason. It is not conceivable that only the Dolan Daughters culpably breached duties (as opposed to the entire board) in setting the non-employee director compensation, accepting positions, attending at least half of all board meetings in a method recognized by the DGCL, and receiving compensation scaled to their participation. The choices of Cablevision's board and the Dolan Daughters, as pled in the complaint, may have been less than ideal. Yet Cablevision's governance system is public knowledge, and questionable decisions do not warrant creating a new policing function for the Court.

C. *The Waste Claims*

Plaintiff's final count alleges waste for the Compensation Committee Defendants' granting (and James and Charles's causing and accepting) awards of stock options that obtained nothing of value for the Company.[78] To state a claim for waste, a plaintiff must sufficiently plead that the directors "authorize[d] an exchange that is so one sided that no business person of ordinary, sound judgment

---

[78] Plaintiff draws on authority regarding waste committed by directors. *See* DD RB 8 ("Plaintiff has not identified a single case in which an executive who was awarded a special options grant by an independent compensation committee was found to be liable for waste by virtue of having accepted the options.").

could conclude that the corporation has received adequate consideration."[79] This is a difficult standard based on policy that encourages rational risk-taking by directors. Retaining the service of an important employee has been recognized as consideration,[80] particularly in the case of stock options.[81] "Courts are ill-fitted to attempt to weigh the adequacy of consideration under the waste standard or, *ex-post,* to judge appropriate degrees of business risk."[82] Furthermore, the DGCL mandates deference to directors' decisions on the value of options "[i]n the absence of actual fraud in the transaction."[83]

Although granted by the compensation committee at a time when other performance awards had failed to vest, the contested options had no value to the

[79] *Leung*, 2000 WL 1478538, at *4 (internal quotation marks omitted). Conclusory allegations do not fulfill this burden. In *California Public Employees' Retirement System v. Coulter*, 2002 WL 31888343, at *11 (Del. Ch. Dec. 18, 2002), the Court observed "insufficient factual allegations to support" the claim that the company's stated reason for repricing employees' options must have been "false because there was no risk that [certain executives] might leave." That conclusion was part of a demand futility analysis, but the reasoning is informative.

[80] *E.g., Official Comm. of Unsec. Creds. of Integrated Health Servs., Inc. v. Elkins*, 2004 WL 1949290, at *18 (Del. Ch. Aug. 24, 2004).

[81] *See Zupnick v. Goizueta*, 698 A.2d 384, 387-88 (Del. Ch. 1997) ("[C]onsideration for stock options is often the reasonable prospect of obtaining the employee's valued future services.").

[82] *Brehm*, 746 A.2d at 263 (internal quotation marks omitted).

[83] 8 *Del. C.* § 157(b).

recipients unless Cablevision's performance improved and the awardees remained employees. James and Charles were not the only recipients. Additionally, the speculation that James and Charles "were not going anywhere"[84] because the Dolan family wanted to take the company private and have financial interests in the Company does not support an inference that James or Charles will always want to serve as executives.[85] The Court declines to suggest that, as Defendants caution, executives with a large stake in a company cannot be awarded incentive-based compensation because it is obvious that they will never leave.

Ultimately, Plaintiff has not sufficiently pled that the compensation committee's option awards were irrational or otherwise impermissible. This is not a case where James and Charles have no work to do for Cablevision, the amounts are shockingly high in comparison to Cablevision's value, or the pricing has been manipulated. The complaint does not support allegations of wrongful interference by James and Charles or reason to know that the awards were improper. Because the Compensation Committee Defendants' option awards did not constitute waste,

---

[84] Compl. ¶ 76.

[85] Plaintiff may challenge the compensation committee's stated purpose for the option awards, but she must support this challenge with non-conclusory allegations.

James and Charles did not cause or accept any wasteful award. Plaintiff's claims for waste against the Compensation Committee Defendants, James, and Charles therefore fail.

\* \* \* \* \*

For the reasons above, Defendants' motions to dismiss are granted.[86]

**IT IS SO ORDERED.**

Very truly yours,

*/s/ **John W. Noble***

JWN/cap
cc:   Register in Chancery-K

---

[86] The request for leave to amend the complaint is denied pursuant to Court of Chancery Rule 15(aaa). Plaintiff has not developed a theory of good cause that justifies amendment at this late stage.